**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ARTHUR LEE HAYES,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-2018-G** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U. S. C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Arthur Lee Hayes ("Plaintiff") for Supplemental Security Income disability benefits ("SSI") under Title XVI of the Social Security Act ("Act"). The Court considered *Plaintiff's Motion for Summary Judgment*, filed February 12, 2010, and *Defendant's Motion for Summary Judgment*, filed May 26, 2010, as well as the record. The Court has also reviewed the parties' evidence in connection with the pleadings and the applicable law, and hereby recommends that the Commissioner's decision be **REVERSED**, and the case **REMANDED** for further proceedings.

# I. BACKGROUND[1]

## A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  On August 13, 2007, Plaintiff filed for supplementary security income, claiming that he is disabled due to HIV, diabetes, and back problems.  (Tr. at 128-34, 140).  His application was denied initially and upon reconsideration.  (Tr. at 13).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  He personally appeared and testified at a hearing held on February 9, 2009.  *Id.*  On June 30, 2009, the ALJ issued his decision finding Plaintiff not disabled.  (Tr. at 13-21).  On August 26, 2009, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  (Tr. at 1).  On July 17, 2009, Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

## B. Factual History

### 1. Age, Education, and Work Experience

Plaintiff was born on September 27, 1954, and was 52 years old at the time of the hearing before the ALJ.  (Tr. at 20).  He has at least a high school education and no relevant work history.  *Id.*

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

## 2. Medical Evidence

In 1984, Plaintiff was diagnosed with HIV, and began anti-viral therapy while incarcerated in 1990.[2] (Tr. at 433). Now, his HIV appears to be well controlled. (Tr. at 528). Plaintiff also suffers from insulin-dependent diabetes and previously was diagnosed with a herniated disk and complains of continuous lower back pain requiring a back brace. (Tr. 210, 218, 222, 233, 241, 273, 464). In 1993, still while incarcerated, Plaintiff underwent three separate carpal tunnel syndrome (CTS) release procedures at John Cedar hospital in Galveston, Texas. (Tr. at 45, 50, 464).

In March 2007, Plaintiff underwent lumbar steroid injections that provided moderate relief to his chronic, severe pain. (Tr. at 294). In October 2007, a consultative exam conducted by Doctor Peter Louis revealed that a lumbar X-Ray did not indicate any vertebra fractures. However, the exam revealed "decreased vibratory sensation, pinprick, and light touch of the lower extremities." (Tr. at 463, 465).

In November 2007, Dr. Noss, at the Ameilia Clinic in Dallas, Texas, diagnosed Plaintiff with recurrent, severe major depressive disorder, with symptoms of sadness, poor sleep, suicidal ideation, hopelessness, worthlessness, irritability, low appetite, low energy, inability to experience pleasure from normally pleasurable life events, constant fatigue, and loneliness. (Tr. at 508). Also, he was treated at Parkland Diabetes Clinic for peripheral neuropathy and blurred

---

[2] While the record is replete with documentation of Plaintiff's health difficulties prior to 2007, all of which the Court has considered, the Court generally will only discuss in this recommendation the medical evidence dating from 2007, the year Plaintiff filed his application for benefits. 20 C.F.R. § 416.335 (noting that the earliest that SSI benefits can be paid is the month following the month the application was filed, and the claimant cannot be paid for any prior months even if the claimant met the requirements for SSI benefits earlier).

vision related to his diabetes. (Tr. at 418-419). In December of 2007, a mental consultative

exam was performed by psychologist Doctor Deborah Whitehead Gleaves, and she diagnosed

Plaintiff with severe, recurrent major depressive disorder without psychotic features. (Tr. at

473). She assessed Plaintiff's GAF at 50, and warned that his prognosis was fair only if he

continued to receive treatment.[3]  (Tr.  at 474).

In May 2008, treating physician Doctor Monastesse, assessed Plaintiff, and based on his

HIV status, diabetes, and hepatitis C, found that Plaintiff could lift and carry light loads, but was

limited to about two hours of standing or walking, or about three hours sitting, in an eight-hour

work day. (Tr. at 499, 501). In addition, he found that Plaintiff's postural limitations included

no climbing ladders, crawling or balancing, and only occasional crouching with the ability to

shift at will from standing, sitting, and walking at no more than 30-minute intervals. (Tr. at 500).

In November 2008, Dr. Monastesse prescribed a new cane for Plaintiff because the one he

was using was missing. (Tr. at 522). Additionally, Plaintiff's glucose levels remained

uncontrolled and his insulin dosages were increased accordingly. (Tr. at 528-532). He was

diagnosed with pedal neuropathy. (Tr. at 521). And, in May of 2009, Dr. Noss's diagnosis of

major recurrent depressive disorder still had not changed. (Tr. at 518).

### 3.    Hearing Testimony

The ALJ held a hearing on February 19, 2009. (Tr. at 13). Plaintiff appeared personally

and was represented by an attorney. *Id.* Plaintiff testified that he had been incarcerated for a

period of 20 years and was released on August 3, 2007. (Tr. at 35). He testified that he has not

---

[3]  GAF stands for Global Assessment of Functioning, and is a scale used to determine a
patient's psychological functioning on a 1 to 100 scale, with 100 being superior functioning.
*Diagnostic and Statistical Manual of Mental Disorders IV-TR* (4th ed.).

worked since his incarceration and that during his incarceration he could not perform any significant work due to work restrictions. *Id.*

Concerning his physical impairments, Plaintiff testified that he first experienced back problems in the early 80's after an office desk fell on him. (Tr. at 39). After that time, he received cortisone shots, was limited to sedentary duty, and had to wear a back brace. *Id.* He stated that he cannot stand more than one and a half hours, or sit in one place for more than two hours. (Tr. at 41). Plaintiff rated his average back pain at six or seven on a scale of one to ten and has to take medication for relief. (Tr. at 42-43). Plaintiff also testified that, in prison, he had a lower bunk assignment, could not walk more than 120 yards, could not bend over to lift something off the floor, and could not lift over twenty pounds. (Tr. at 35-36). He said that he experiences diabetic neuropathy in his feet which affects his ability to stand and rates his pain at 6.5 on a scale of one to ten, and suffers from carpel tunnel syndrome which occasionally affects his ability to hold objects. (Tr. at 44, 46).

A vocational expert ("VE") also testified at the hearing. (Tr. at 52-63). The ALJ asked the VE to assume a hypothetical person with Plaintiff's age, education, and no relevant work history, who could occasionally lift and carry twenty pounds; frequently lift ten pounds; occasionally climb stairs; occasionally crouch, crawl or kneel; stand and walk six-hours in an eight-hour workday; sit six of eight hours with an option every thirty minutes to sit, stand or stretch for two minutes, and who could not climb ladders, ropes, or scaffolds; perform balancing; work near hazardous moving machinery or at unprotected heights; work in temperature extremes; handle food; and the RML is 4-3-3. (Tr. at 53-54). Based on that hypothetical, the VE opined that the person would be able to perform work as a photocopy machine operator, a cleaner or

housekeeper, or as a ticket seller. *Id.* After the ALJ modified the hypothetical to include the person's use of a single point cane for ambulation; the VE concluded that such an individual could not perform any light, unskilled work. *Id.* The ALJ again modified the hypothetical to include the limitation of only occasional handling and fingering; and the VE concluded that there would be a significant erosional effect on the light, unskilled occupational base. (Tr. at 53-55). As a result, jobs as ticket seller, cleaner, and photocopying machine operator would be eliminated,. and only roughly 35 jobs would remain. *Id*.

Upon cross-examination by Plaintiff's attorney, the VE testified that an individual who took narcotic pain killers to meet normal job hiring requirements and had to lie down frequently throughout an eight hour day due to side effects would have a limited ability to retain work. (Tr. at 57). The VE also opined that depending on the handling and fingering limitations, there could be an additional effect on the 35 jobs remaining. (Tr. at 60).

C.    **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on June 30, 2009. (Tr. at 15-21). He found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15, ¶1). He noted that Plaintiff suffered from the severe impairments of diabetes mellitus, HIV, back disorder, and major depressive disorder, but concluded that these impairments did not meet or equal a listed impairment. (Tr. at 15, ¶¶ 2, 3). The ALJ found Plaintiff has the residual functional capacity to lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; stand and walk a total of 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally climb ramps & stairs; with no balancing; occasional crouching, or crawling and kneeling; and no work involving handling of

foods; or exposure to unprotected heights, hazardous moving machinery or extreme temperatures. (Tr. at 16, ¶4). In addition, he found that Plaintiff was limited to only occasional contact with the public, co-workers, and supervisors. *Id*. He further concluded that Plaintiff had not been disabled since August 13, 2007, the date of his disability application. (Tr. at 21, ¶10).

## II. ANALYSIS

### A. <u>Legal Standards</u>

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations

governing the determination of disability under a claim for disability insurance benefits are

identical to those governing the determination under a claim for supplemental security income.

*See id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an

ALJ's decision. *See id.*

## 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled

as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d

638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the

inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is
disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and remand solely for calculation of benefits, and in the alternative, to remand for further proceedings before a different ALJ. (P. Br. at 1, 23).

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an

immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The

Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452

(5th Cir. 2000).

**B.      Issues for Review**

Plaintiff identifies the following issues for review:

(1)      The ALJ's finding that Plaintiff maintained a restricted light residual functional capacity (RFC) was not based on substantial evidence, improperly weighed the opinions of treating physicians, contains errors of interpretation, and improperly discredits the plaintiff's credibility;

(2)      The ALJ's rejection of Plaintiff's assessed global assessment of functioning (GAF) score was not based on substantial evidence;

(3)      The ALJ erred in classifying Plaintiff's age in the decision;

(4)      The ALJ's failure to include the use of a single point cane in Plaintiff's RFC was error requiring a reversal of the decision; and

(5)      The decision is flawed because the occupations the ALJ concluded Plaintiff was capable of performing were prohibited by the RFC[4] determined by the ALJ.

(Pl. Br. at 2). Because, as a result of the analysis of the first issue, the undersigned concludes that

reversal and remand are required, the remaining issues are not reached.

**C.      Treating Physician's Opinion**

Plaintiff complains that the ALJ erred by failing to give proper weight to Dr.

Monastesse's opinion concerning his physical limitations. (Pl. Br. at 12-16). Plaintiff argues

that Dr. Monastesse's opinion, as a treating physician's opinion, was entitled to considerable

weight in determining disability and the ALJ did not provide "good cause" for rejecting his

opinion. (*Id.*)

---

[4] "RFC" stands for residual functional capacity.

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence.  20 C.F.R. § 404.1527(c)(2).  Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating physician.  20 C.F.R. § 404.1527(d).  In fact, when "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight.  *Id.*  If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion:  (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion."  *See id.* § 404.1527(d)(1)-(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  If evidence supports a contrary conclusion, an opinion of any physician may be rejected.  *Id.*  A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Id*. at 455-56.  Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ

performs a detailed analysis of the treating physician's views under the criteria set forth in 20

C.F.R. § 404.1527(d)(2)." *Id*. at 453.  A detailed analysis is unnecessary, however, when "there

is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's

opinion is more well-founded than another," or when the ALJ has weighed "the treating

physician's opinion on disability against the medical opinion of other physicians who have

treated or examined the claimant and have specific medical bases for a contrary opinion." *Id*. at

458.

Here, the medical record consists of opinions from Dr. Louis, a state agency consulting

examiner, Dr. Monastesse, a treating physician, Dr. Noss, an examining, if not treating physician,

Dr. Gleaves, a consultative examiner, and a health classification from TDCJ.  In 2008, Dr.

Monastesse opined that Plaintiff could stand and walk for about 2 hours during an 8-hour work

day and sit for about 3 hours during an 8-hour workday**.**  (Tr. at 499, 501).  This assessment was

based on Hayes physical impairments.  These restrictions were consistent with medical findings

that Plaintiff had uncontrolled insulin-dependent diabetes (Tr. at 501), a severe back disorder (Tr.

at 427-431) and peripheral neuropathy  (Tr. at 418-419).  It is also consistent with the health

classification from TDCJ that limited Plaintiff to only sedentary jobs and postural restrictions of

no bending, squatting, or climbing.  (Tr. at 415).

Notwithstanding this evidence, the ALJ found the claimant could lift and carry a

maximum of 20 pounds occasionally and 10 pounds frequently and could stand and walk a total

of 6 hours in an 8-hour workday.  (Tr. at 19).  He relied solely on Dr. Louis's opinion which was

based on Plaintiff's recitation of his medical history during a single meeting.  (Tr. at 463-465).

During that meeting, Plaintiff complained of lower back pain that radiated to his right lateral leg,

indicative of a herniated disk; however, Dr. Louis failed to perform any additional physical

inspection consistent with standard exam techniques.

In the AlJ's narrative discussion, he did not properly weigh Dr. Monastesse's medical

opinion, show good cause for rejecting that opinion or find that Dr. Louis's opinion was more

well-founded.  He dismissed Dr. Monastesse's opinion by simply stating that the doctor relied

too heavily on Plaintiff's subjective complaints and that his reports did not reveal the type of

clinical and laboratory abnormalities a disabled claimant would be expected to reveal.  (Tr. at

19).  The ALJ states that, instead, he "gives more weight to the opinion of Dr. Louis," but

provides no reasoning for doing so.  *Id*.  When an ALJ fails to consider all evidence from a

treating source and fails to present good cause for rejecting it, the matter should be remanded for

further consideration.  *See Myers v. Apfel*, 238 F.3d 617, 621-622 (5th Cir. 2002); *Newton v.

Apfel*, 209 F.3d 448, 455-58  (5th Cir. 2000).  An "ALJ must consider all the record evidence and

cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d

378, 393 (5th Cir. 2000).

The Commissioner argues for the first time in this appeal that Dr. Monastesse's opinion

was medically unsupported[5] and was controverted by the other medical evidence of record.  (D.

Br. at 15).  Nevertheless, it is well established that a court may only affirm the ALJ's decision

"on the grounds which he stated" for reaching his decision.  *Cole v. Barnhart*, 288 F.3d 149, 151

(5th Cir. 2002) (*per curiam*).  Here, the ALJ failed to consider the health classification provided

by the TDCJ, although it is consistent with Dr. Monastesse's assessment, or state supportive

---

[5] Defendant provides no authority yet argues that relevant medical evidence is limited to
that following filing for SSI.  *Loza* does not support this contention.

reasoning for giving more weight to the opinion of a non-treating physician, or provide good cause for rejecting Dr. Monastesse's opinion. This failure constitutes legal error requiring remand. *See Waters v. Massanari*, No. 4:00-CV-1656-Y, 2001 WL 1143149, at *11 (N.D. Tex. Sept 24, 2001) (finding "legal error" where the ALJ improperly evaluated opinions of a treating physician.)

## III. RECOMMENDATION

For the forgoing reasons, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED** in part, and the Court **REVERSE** and **REMAND** for further proceedings. The undersigned further recommends that Plaintiff's request that the case be remanded to a different ALJ be denied, as Plaintiff has failed to offer legal authority or facts to justify that action.

**SIGNED** August 27, 2010.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE